Shaw, C. J.
This action is brought to recover damages under the general lawT, charging towns and cities for injuries sustained by travellers, in consequence of defects in highways. Rev. Sts. c. 25, § 22. The declaration alleged a defect in a certain highway, called Second street, in that part of Boston known as South Boston; and it became necessary, on the part of the plaintiff, in order to maintain his action, to prove that the place, at which he sustained the injury in question, was a highway, or town-way, which the city of Boston were bound to keep in repair. For this purpose, the plaintiff relied on and gave in evidence a vote of the selectmen of the town of Boston, passed in February, 1805. This vote was passed in pursuance of a special act of the legislature of the 6th of March, 1804, and laid out various streets and public ways over the entire peninsula of South Boston, then annexed to Boston, but which had before been a part of Dorchester, known as Dorchester Point. Amongst others, thus laid out, was a very long street, called Second street.
The plaintiff also offered in evidence a plan of Mather Withington, being a copy of the original plan, by which the said ways were laid out. The plaintiff likewise offered evidence of some travel over that part of Second street, at which the way was alleged to be defective, and of some work done thereon ; but the evidence was conflicting as to the *6 amount of such travel, and as to the quantity of work, and there was no evidence of the authority by which the work was done. The judge, at the trial, upon the evidence, ordered a nonsuit, on the ground that the evidence was not sufficient to prove the place in question a public way. Two grounds of defence were taken, namely, 1st, That the evidence did not show that the street was so travelled and used, as to make it a way de fado, or give it the appearance of a travelled way, and that the plaintiff could not so consider it; and 2d, That it had not the legal character of a public way, so as to render the city responsible for its safety, good condition and repair.
The court have heretofore expressed an opinion, that upon the first ground the nonsuit ought to be confirmed. But a motion having been made to set aside the nonsuit, in order to admit farther evidence on this point, that the street was de fado used, and had the appearance of a way, it becomes necessary to consider the other ground. It would be useless to receive farther evidence to this point, if it could not avail the plaintiff; and if the place, at which the injury was sustained by the plaintiff, was not a public way, for the repair of which the city is responsible, the proposed evidence would be immaterial.
The streets at South Boston stand on a peculiar footing, in regard to their origin; but when completed and opened for use, they are in all respects highways; and the rights of the public, and the duties of the city, in regard to them, then attach. In the ordinary course of laying but highways, by the general law, two things must concur to make a complete highway, which the public may travel, and for the safety of which towns are liable: 1st. An adjudication that the way described is of common convenience and necessity, and the location of it; 2d. That it be levelled, graded, and opened to the public for use. Mere adjudication and location alone will not make it fit for travel or warrant travellers in using it at the risk of the town. Bliss v. Deerfield, 13 Pick. 102; Drury v. Worcester, 21 Pick. 44.
Something of the same kind exists in regard to public ways in South Boston, with one material difference. When the *7 peninsula of Dorchester Point was annexed to Boston, it was for the avowed purpose of converting the territory into house lots; and at the session of the legislature succeeding that at which the annexation took place, the proprietors were incorporated for the better management of their lands. 3 Mass. Spec. Laws, 607. By the act of annexation, (Stat. 1803, c. 111,) passed March 6th, 1804, this annexation was effected. The third section of this statute provides, that the selectmen of Boston shall be and are authorized to lay out such streets and lanes through the tract, as in their judgment may be for the common benefit of the proprietors and of said town of Boston ; a reasonable attention being paid to the wishes of the proprietors, &c.; provided that no damage or compensation shall be allowed to any proprietor, for such streets and lanes as shall be laid out within twelve months from the passing of this act; and provided, also, that the town of Boston shall not be obliged to complete the streets, laid out by their selectmen pursuant to this act, sooner than they may deem it expedient to do. This section, therefore, provides, first, that streets shall be laid out; second, that no damages be awarded to the owners of lands therefor, if laid out within a year; and third, that the town of Boston shall not be obliged to complete the streets so laid out by their selectmen, pursuant to the act, until they may deem it expedient to do so. The streets at South Boston were laid out by the selectmen, within a year, according to the authority thus conferred on them by the act of annexation, by a vote passed in February, 1805.
Taking these provisions together, it is manifest, that the laying out, although extremely convenient and even necessary to the proprietors, to inform them where the future streets were to be, and to enable them tp adapt their buildings to such streets, was yet but a step towards making the places thus designated and laid out actual highways. Another material act was to be done by the town, that is, by that department of the municipal government charged with this portion of its administration. Formerly, and when the statute was passed, this official act was to be done by the selectmen, and after the city government was established, by the mayor and *8 aldermen. Without this limitation, the act of laying out would have imposed an intolerable burden upon the town, the prospect of which, it may well be supposed, would have deterred the selectmen from laying out streets, in the manner they did, over this entire territory, then almost vacant. This provision vested the entire and unlimited power in the town government to “ complete ” the streets, that is, to determine the time, at which they should be graded, finished, and fitted for travel, and opened for use. This second act of “ completion ” must concur with the former act of “ laying out,” in order to make the streets actual highways, and charge the municipal government with the risk of their safety.
In the case cited, (Commonwealth v. Boston, 16 Pick. 442,) it was held, that it was competent for that branch of the city government charged with the duty of laying out and maintaining highways, that is, the mayor and aldermen, to complete any one of the streets, or any part or section of either of them, when, in their judgment, the common convenience and necessity should require it, and not before. When, therefore, they pass a vote, which, in terms, or by necessary implication, declares that one of these streets, or a part thereof, shall be made passable, they decide in effect that such street is necessary to the common and public convenience for travel, and such vote must be equivalent to a vote to “ complete ” the street; and then and ever after it becomes their duty to keep it in good repair, to have it safe and convenient, and open for public travel, and within a reasonable time to fit it for that purpose; and if they fail to do so, such duty may be enforced by a public prosecution. The mayor and aldermen, on the 7th of November, 1831, had passed a vote, on the petition of persons praying that Second street, South Boston, might be opened, and made suitable for public travel, that said street be made passable “ from Turnpike to Dorchester street,” provided that a sum not exceeding five hundred dollars be expended during the then current year. It was held, that this vote was equivalent to a vote that such part of Second street, as it in terms embraced, should be completed ; that it then became, to all intents, a public way, and that the city *9 could not limit their duty and responsibility, by voting to expend no more than a sum fixed and named.
It appears by the report, that the defect, of which the plaintiff complains, was in that part of Second street, as originally laid out, which is east of Dorchester street, and not within the limits mentioned in the vote of the 7th of November, 1831, and thereby ordered to be “ completed” by being made passable. This part of the street was' not, therefore, made a public way, conformably to the provisions of the statute.
It might seem, that some of the votes of the mayor and aldermen, stated in the report, related to Second street, generally, without distinguishing between one section and another, and thus raised the question, whether the whole of Second street had not been accepted and ordered to be completed. But all these votes were passed after the vote directing Second street “ from Turnpike to Dorchester street ” to be made passable. The street designated in the vote of 1805 as Second street was a very long one, and the section which was directed to be made passable embraced that portion only which was then built upon.
And it appears by the evidence, that the distinction between Second street west, and Second street east, was well understood, and that no act was done by which it could be inferred that Second street east had been ordered by the competent authority to be “ completed,” “ made passable,” or otherwise constituted a public way, which the city were bound to maintain and keep in repair.

Nonsuit confirmed.